# FREDERICK W. SHORT *et al.*

## *v.*

## MARY KIEFFER *et al.*

*Filed at Ottawa June 20, 1892.*

1. CONTRACT—*writings for the sale of land construed.* The owners of a tract of land wrote and signed a letter to a real estate agent, stating therein that he was authorized to sell the property within the next six months, at "$700 per acre, one-fourth cash, balance in one, two and three years, with six per cent interest." Within the time limited the agent signed and delivered a writing, certifying that he had that day sold to S. the land (describing it) for $700 per acre, and acknowledged the receipt of $200 as part payment, etc.: *Held*, that the writing, most favorably construed for S., would amount to an agreement on the part of the owner to convey to S. the land for $700 per acre, one-fourth to be paid in cash and the balance in one, two and three years, with six per cent interest from the date of sale. Under such a contract the owners should receive the contract price according to the terms agreed on, and on the receipt thereof convey to S. their interest in the land.

2. SAME—*signed by one party and accepted by the other.* The failure of the purchaser of land to sign the contract of sale with the other party will not affect its validity, provided he has accepted it and acted upon it.

3. AGENT—*purchaser from an agent is bound to know he is acting within his authority.* One purchasing land from an agent is bound to know that the agent is acting within the scope of his authority.

4. SPECIFIC PERFORMANCE—*complainant must show himslf not in default.* The elementary rule that before one party to a contract can call upon the other to perform, he must show that he is not in default himself, applies with peculiar force and strictness in all bills for specific performance.

5. Where a contract for the sale of land provides that one-fourth of the purchase price shall be paid down in cash, and the balance in one, two and three years, with six per cent interest, the purchaser can not lie by until the termination of a partition suit brought by the vendors to perfect the title, a part of which is in minors, and the sale of the property, and interplead thereafter, and have the court direct the payment of all the proceeds of the sale over the contract price, to him.

6. The complainant is required to make out a much stronger case to support an application for the specific performance of a contract than the defendant is required to show to resist it. It is not sufficient to

show merely that the adverse party is in default, but the party complaining must show that he is not liable to the same imputation.

7. PLEADINGS—*bill for specific performance—sufficiency of averment of performance by complainant.* A general and indefinite conclusion of the pleader that the complainant seeking a specific performance of an agreement has done all things necessary to entitle him to the relief sought, is not in any proper sense such an averment of performance as the law requires.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. O. H. HORTON, Judge, presiding.

On December 18, 1879, Frank Kieffer died testate, in Cook county, this State, leaving surviving him, Mary Kieffer, his widow, and Jacob, Peter, Annie, Katie, Maggie, Frank, and Nicholas, his surviving children, and also a posthumous son, named Christian. He was seized at the time of his death, in fee, of the following described real estate, to-wit: "That part of the south-west quarter of section 36, in township 38, north of range 13, east of the third principal meridian, commencing at a point $11\frac{85}{100}$ chains east of the north-west corner of said south-west quarter, and running thence south 22 chains, thence east $4\frac{80}{100}$ chains, thence south 3 chains, thence east $14\frac{77}{100}$ chains, thence north 25 chains, thence west $19\frac{58}{100}$ chains to the place of beginning, containing $47\frac{51}{100}$ acres, more or less." By his last will and testament he willed this real estate, by an imperfect description, to his said widow for life, and the remainder to his said children in fee.

On the 30th of December, 1885, Nicholas Kieffer, one of the sons, died intestate, leaving the said Mary, his mother, and his said brothers and sisters, his only heirs-at-law. On the 28th day of December, 1889, said widow and surviving children signed and delivered to one Louis J. Hitz the following letter:

"*L. J. Hitz:*

"DEAR SIR—You are authorized to sell, within the next six months, the $47\frac{51}{100}$ acres owned by us, situated in the south-

west quarter of Sec. 36, T. 38, R. 13, at $700 per acre, one-fourth cash, balance in one, two and three years, with six per cent interest, and we will allow you five per cent commission for selling same, to be deducted out of the first payment, provided you will pay all expenses, court costs and attorneys' fees for perfecting the title to said land by filing bill for partition. We agree not to place this land in the hands of any one else for sale within said six months."

Subsequently said Hitz signed and delivered to Frederick W. Short the following writing:

"Chicago, *March 26, 1890.*

"This is to certify that I have this day sold to Frederick W. Short the 47½ acres situated in Sec. 36, T. 37 N., R. 13, known as the Kieffer farm, for $700 per acre, as per terms in contract with the Kieffer heirs, dated December 28, 1889, and that I have received from him $200 as part payment of purchase money, to be used towards legal expenses in perfecting the title to the same.    .    Louis J. Hitz."

At the time of signing said letter to said Hitz, two of said children, viz., Christian Kieffer and Frank Kieffer, were minors. On the 9th of April, 1890, said widow and the adult children of said Frank Kieffer, deceased, filed a bill for partition of said real estate, in the circuit court of Cook county, making said minor children defendants. This bill also set up the fact that the lands were imperfectly described in said will, and prayed that the same might be construed so as to perfect the description and vest the title in said legatees in and to said real estate. On the 18th of June following, a decree was entered by said circuit court according to the prayer of the bill, and commissioners appointed to make partition accordingly. On the 23d of the same month, said commissioners reporting the premises not susceptible of division, there was a decree of sale, and the premises subsequently sold by the master to appellant Prenzlaur at $36,250. On the 25th of

November following, on exceptions by the complainants in said bill, and also by the minor defendants by a next friend, that sale was set aside and a re-sale ordered. On the 17th day of March, 1891, the premises were again sold by the master in chancery to a third party for $47,500. Up to the date of the first sale of said premises neither of these appellants appears to have had any connection whatever with said proceeding. At that sale, appellant Prenzlaur having bid off the property, paid to the master $1000 in cash. ˙ On the hearing upon the exceptions to that sale he appeared by counsel and resisted the motion of the parties to the bill to vacate said sale. By the order setting aside the sale to him the master was ordered to refund to him said $1000, which he accepted, and so far as the record shows acquiesced in said order.

On the 2d day of April, 1891, Frederick W. Short and said Prenzlaur filed an interpleader, which they subsequently amended by making appellant Edmund G. Short a party petitioner. To this interpleader all the parties to the original bill were made parties defendant. On the 6th of May, 1891, none of the parties, either to the original bill or to said interpleader, objecting, said last named sale was approved, and the master ordered to convey the premises to the purchaser upon his making payments as therein directed, and also directing the master to hold the proceeds of said sale for distribution according to the rights of the respective parties as thereafter determined by the court. To said intervening petition, as amended, the defendants thereto filed a general demurrer, which was on the 12th of June, 1891, sustained, and the petition dismissed at the costs of the petitioners, for want of equity. On the 26th of June, 1891, the master was ordered to make distribution of the proceeds of said last mentioned sale among the parties to said original bill, according to the rights of each of them as therein set forth. On July 20, 1891, he made his report of distribution, which was duly approved. This appeal was prayed from the order of June 12 sustaining the demurrer

to said intervening petition, and the errors assigned raise only the question as to the correctness of that order.

The petition sets up the letter, signed by said widow and children, to Louis J. Hitz, of December 28, 1889, and also the instrument signed by said Hitz, to Frederick W. Short, March 26, 1890. It sets out at length transactions between the petitioners themselves, by which it is alleged said Edmund G. Short and Herman Prenzlaur became interested, jointly with said Frederick W. Short, in whatever rights he acquired under said last mentioned writing; but these transactions have no bearing upon the question whether appellants are entitled to the relief prayed against appellees. It is further alleged, that by force of said instrument of March 26, petitioners became entitled to a conveyance from said widow and adult children, of all their right, title and interest in said real estate; "that in pursuance of the terms of said contract of sale and said power of attorney, and for the purpose of perfecting the title to said premises and carrying out said contract of sale on their part, said widow and adult heirs (naming them) as complainants, filed the bill in this case on the 9th day of April, A. D. 1890." Reference is made to said partition proceedings, and the same made part of the petition. The first sale by the master in chancery is referred to, and certain transactions between petitioners in reference thereto set out, but they have no bearing upon the issue involved here. The same is true of the allegations as to the subsequent orders of the court, the re-sale, etc.

There is nothing whatever in said petition tending to show that said Louis J. Hitz had the slightest connection with said partition proceeding, from first to last, neither is there any pretense made that the petitioners had any communication or understanding whatever with appellees as to their claim to any interest in said lands. They base their claim to the relief prayed, solely, on said two instruments in writing, unaided by allegations explaining or construing the same or either of

them, but say that "in a court of equity your petitioner, Frederick W. Short, acting on behalf of himself and said Edmund G. Short, by virtue of said contract of sale to him by said Mary Kieffer and said Kieffer heirs, made said 26th day of March, A. D. 1890, thereupon became the owner in equity, for the joint benefit of himself and said Edmund G. Short, of all the right, title and interest of said Mary Kieffer, Jacob Kieffer, Annie Kieffer, Peter Kieffer, Maggie Kieffer and Katie Kieffer in and to said premises, and entitled to a conveyance from them of their said interest according to the terms of said contract." The only attempt at an allegation of performance or offer to perform any contract on their part is the statement "that your petitioners have each and all of them performed all and every act necessary to be performed on the part of each or all of them in order to entitle them to a conveyance from Mary Kieffer and (giving the names of said adults) of all their right, title and interest in said premises."

The relief prayed. is, that after allowing said widow and adult children a sum equal to their respective shares of the purchase price of said real estate under said contract of purchase, out of the said $47,000 realized at said sale last made by the master in chancery, the balance of the distributive amounts due said widow and children be ordered paid over to said petitioners. Nothing is claimed as against the said minor children.

Messrs. FELSENTHAL & D'ANCONA, and Mr. H. H. MARTIN, for the appellants:

On the making of a contract for the sale of land the vendor becomes the equitable owner of the land, subject to the vendor's lien. 1 Pomeroy's Eq. Jur. sec. 368; Pomeroy on Specific Perf. sec. 314; 1 Perry on Trusts, sec. 231; *Lombard* v. *Chicago Sinai Congregation,* 64 Ill. 481; *Lasaght* v. *Edwards,* 2 Ch. Dix. 506; *Ricker* v. *Moore,* 77 Me. 292; *Haughwont* v. *Murphy,* 7 C. E. Green, 531.

The agreement by Mary Kieffer and the adult heirs was a several agreement by each of them to convey the title which each of them had. *Hooker* v. *Pynchon*, 8 Gray, 550; *Meek* v. *Wulthall*, 20 Ark. 648.

When the vendors are unable to convey the full title, specific performance may be decreed as to the part they are able to convey, and have compensation as to the other parts. See 3 Pomeroy's Eq. Jur. sec. 1405, note 1; *Harding* v. *Parshall*, 56 Ill. 219; *Watson* v. *Doyle*, 130 id. 415; *Mathison* v. *Wilson*, 87 id. 51; *Humphrey* v. *Clement*, 44 id. 299; *Jefferson* v. *Jefferson*, 96 id. 551; *Litsey* v. *Whittemore*, 111 id. 267; *Hall* v. *Hall*, 125 id. 95.

A contract need not be signed by both parties. It is enough if signed by the parties sought to be charged. *Ester* v. *Furlong*, 59 Ill. 298; *Perkins* v. *Hadsell*, 50 id. 216; *Esmay* v. *Gorton* 18 id. 483; *Farwell* v. *Lowther*, id. 252.

Appellants, being the equitable owners, have a right to the proceeds of the master's sale, so far as such proceeds represent the title and interest of Mary Kieffer and the adult heirs, other than the homestead, in the premises sold. Pomeroy's Eq. Jur. sec. 1051; Waterman on Specific Perf. sec. 512; Pomeroy on Specific Perf. sec. 468; *Bradley* v. *Luce*, 99 Ill. 234; *Bank* v. *Gas Co.* 36 Minn. 75; *Lathrop* v. *Bampton*, 31 Cal. 17; *Newton* v. *Taylor*, 32 Ohio St. 399; 7 Baxter, 531.

Mr. James O'Connell, and Messrs. Duncan & Gilbert, for the appellees:

The law is well settled that a contract will not be specifically enforced in favor of one party unless it is, upon its face, such a one as a court could specifically enforce in favor of the other party. Waterman on Specific Perf. secs. 196-206; *King* v. *Gildersleve*, 79 Cal. 504; *Bourget* v. *Monroe*, 58 Mich. 563; *Sutherland* v. *Parkins*, 75 Ill. 338.

In order to induce a court of equity to enforce a contract specifically it must be reasonable, fair and just, and its en-

forcement must be not productive of great hardship. *Bow-man* v. *Cunningham*, 78 Ill. 48; *Lear* v. *Chouteau*, 23 id. 39; *Stone* v. *Pratt*, 25 id. 25.

The party seeking specific performance must show that he has always been ready, willing and eager to perform, and there must be no change of circumstances in regard to the property that renders it unconscionable that the party should have the right to enforce his contract. *Hoyt* v. *Tuxbury*, 70 Ill. 331; *Iglehart* v. *Vail*, 73 id. 63.

The party asking specific performance of a contract must be able to show that his conduct has been honorable and fair. He must come into court with clean hands. *Mitchell* v. *King*, 77 Ill. 462; *Doyle* v. *Teas*, 4 Scam. 202.

Mr. JUSTICE WILKIN delivered the opinion of the Court:

In our view of this record, the fact that two of the Kieffer children were minors at the time the power of attorney was signed and when the alleged sale was made to Frederick W. Short, is not of controlling importance. Unless appellants have alleged in their petition facts sufficient to support the averment that by virtue of said power of attorney and sale to Frederick W. Short he "became entitled to a conveyance from said adult parties of all their right, title and interest in said premises," without reference to the disability of the minors, the decree below was clearly right. Appellants could, under no theory of the law, be entitled to share in the proceeds of the land sold at the master's sale unless they have established their right to the land itself. The intervening petition may therefore be tested by the same rules of law which would have been applicable if it had been a bill for specific performance against appellees, they alone signing the power of attorney. The letter of December 28, at most, only gave Hitz power to contract for the sale of said land. It does not purport to give him authority to convey, and, not being under

seal, would be insufficient for that purpose if it did. *Johnson v. Dodge,* 17 Ill. 433; *Peabody* y. *Hoard,* 46 id. 242.

Did the instrument of March 20, under that power, amount to a contract of sale, and if it did, what were its terms? The mere fact that Short did not sign the writing would not affect its validity as a contract, provided he accepted it and acted upon it. (*Johnson* v. *Dodge, supra,* and authorities cited.) It is well understood that one purchasing land from an agent is bound to see the authority of the agent, and know that he is acting within the scope of his authority. In this case, Short did see whatever authority Hitz had, because the terms of his contract were fixed by reference to that power. Suppose, then, a contract is framed between Hitz, as agent for these appellees, and Frederick W. Short, from the two instruments what would be its terms? Most favorably construed to appellants, it would amount to an agreement on the part of appellees to convey to Short said land in consideration of $700 per acre, one-fourth to be paid in cash and the balance in one, two and three years, with six per cent interest from the date of sale. Under that contract the mutual rights of the parties would be, that appellees should receive the contract price according to the terms agreed upon, and on the receipt thereof convey to Short, by good and sufficient deed, all their right, title and interest in said real estate.

The elementary rule, that before one party to a contract can call upon the other to perform he must show that he is not in default himself, applies with peculiar force and strictness in all bills for specific performance. (*Scott* v. *Shepherd,* 3 Gilm. 483; *Brown* v. *Cannon,* 5 id. 174; *Warren* v. *Richmond,* 53 Ill. 52.) "The complainant is required to make out a much stronger case to support an application for the specific performance of a contract than the defendant is required to show to resist it. It is not sufficient to show merely that the adverse party is in default, but the party complaining must show that he is not liable to the same imputation." It

was said in *Cronk* v. *Trumble*, 66 Ill. 428 : "It is the established rule of this court that a purchaser of land has no right to apply to a court of chancery to compel a conveyance, unless he has, previously to filing his bill, clothed himself with the right to demand a deed without any further thing being done on his part."

As will be seen by reference to the foregoing statement of facts, there is in this petition no averment of the payment of the contract price, or an offer to do so. The only attempt to allege performance of the contract on the part of Frederick W. Short, or either of the other petitioners, is the general and indefinite conclusion of the pleader that they had done all things necessary, etc. No one can seriously contend that is, in any proper sense, an averment of performance, within the foregoing rule. Moreover, the petition proceeds throughout upon the assumption that the petitioners had nothing to do but await the final determination of a partition proceeding, and then take all of the proceeds of the partition sale, except enough thereof to pay appellees the $700 per acre. It is too clear for argument that nothing of that kind is shown by the alleged agreement, nor is there any averment in the petition that the parties so agreed or understood. To hold that the power of attorney to Hitz authorized him to make a present sale of said land, binding upon his principals, giving the purchaser an indefinite time, depending upon the termination of a suit to be thereafter brought, in which to comply with the terms of the sale, would be most unreasonable, and in the face of the terms of the contract. The power of sale was to be exercised within six months from its date. The sale was to be for one-fourth cash,— not at some indefinite time in the future, but when the sale was made. The deferred payments were to be evidenced by some obligation drawing six per cent interest,— not of some purchaser at a partition sale, but of the party to whom Hitz should make a sale. If the power of attorney is construed as authorizing the agent to

make a sale without first perfecting the title, then, clearly, the terms of the sale were in no way affected by what is said in the letter of December 28 as to a partition suit. But on their own theory they have not performed the contract. They are not offering to pay appellees one-fourth of what they say was the purchase price under their contract with the agent, and themselves become responsible for the deferred payments. As before said, this is not a case in which they can ask to have the proceeds of the sale of the land by merely making an indefinite offer to let the court adjust the equities between them and appellees, but they must show that by a valid contract they became entitled to the land, and that they have specifically performed, or offered to perform, that contract on their part. This they have wholly failed to do.

It is a significant fact, that while appellants are insisting upon the benefits of the suit for the partition of the lands in question, they do not pretend by their petition that either themselves or Hitz had any connection whatever with that proceeding, except that, by a combination between themselves to stifle bidding at the first master's sale, one of them bid off the land for $11,250 less than it sold for at the last sale. Appellees were permitted to go on, at their own expense, paying attorney's fees, and other costs, and perfect their title and complete the partition of the premises, and now appellants ask a court of equity to give them the benefit of a contract with an agent, neither they nor the agent having complied with a single feature of the contract.

There are other grounds upon which the decree of the court below should be sustained, but we do not deem it necessary to point them out in this opinion.

The decree of the circuit court was clearly right, and the judgment of affirmance by the Appellate Court is fully supported by the reasoning in the opinion of that court. Its judgment will be affirmed.

*Judgment affirmed.*