81  109
s182s433

# East St. Louis Connecting Railway Co. v. The City of East St. Louis.

1. INJUNCTIONS—*Restraining the Breach of a Contract.*—An injunction restraining the breach of a contract is a negative, specific enforcement of that contract. The jurisdiction of equity to grant such an injunction is substantially coincident with its jurisdiction to compel a specific performance. Both are governed by the same doctrines and rules. It may be stated as a general proposition, that whenever the contract is one of a class which will be affirmatively, specifically enforced, a court of equity will restrain a breach by injunction if that is the only practical mode of enforcement which its terms permit.

2. SAME—*Compelling the Specific Performance of Contracts.*—The City of East Louis granted, by ordinance, the right of way in certain streets to a railway company, and afterward, on the same day, repealed such ordinance and ordered the money which had been paid to it by the railway company refunded. After an acquiescence in such revocation for more than ten years from the passage of the ordinance granting the right and the one revoking it, no attempt having been made to exercise the right, nor any expenditure on the faith of such grant, but apparent acquiescence in the action of the council revoking the grant, during which time the city had doubled in population, and been incorporated

under the general law, its streets extended, a public school building erected at a cost of $50,000, abutting upon one of the streets embraced in the grant of the right of way, and many private residences erected along those streets, and occupied by citizens of the municipality. *Held*, that to enforce this specific performance of the contract now by injunction would interfere with public interests.

3. SPECIFIC PERFORMANCE—*Not a Matter of Right.*—A party can not, as a matter of right, have a contract specifically enforced in equity; the exercise of this power rests in the sound discretion of the court, in view of the terms of the contract, and the surrounding circumstances. No positive rule can be laid down by which the action of the court is to be governed in such cases.

**Bill for Injunction.**—Trial in the Circuit Court of St. Clair County; the Hon. MARTIN W. SCHAEFFER, Judge, presiding. Hearing and bill dismissed; appeal by complainants. Heard in this court at the August term, 1898. Affirmed. Opinion filed March 10, 1899.

CHARLES W. THOMAS, attorney for appellant, contended that ordinance 483 was an irrevocable grant and after its acceptance by the complainant and the payment by complainant of the consideration named in it, the grant was no longer subject to revocation. City of Quincy v. Bull, 106 Ill. 337; Chicago Mun. Gas Lt. Co. v. Town of Lake, 130 Ill. 42.

B. H. CANBY and FORMAN & BROWNING, attorneys for appellee.

It is the settled doctrine in this State that a party can not, as a matter of right, have a contract specifically enforced in equity, but that the exercise of this power rests in the sound discretion of the court, in view of the terms of the contract, and the surrounding circumstances. McCabe v. Crosier, 69 Ill. 501; C., B. & Q. R. R. Co. v. Reno et al., 113 Ill. 39; Phelps v. I. C. R. R. Co., 63 Ill. 468; Chicago Mu. Gas Light Co. v. Town of Lake, 130 Ill. 42.

In Pomeroy's Equity Jurisprudence, Sec. 1341, it is said:

" An injunction restraining the breach of a contract is a negative specific enforcement of that contract. The jurisdiction of equity to grant such an injunction is substantially coincident with its jurisdiction to compel a specific performance. Both are governed by the same doctrines and

rules. It may be stated as a general proposition that whenever the contract is one of a class which will be affirmatively, specifically enforced, a court of equity will restrain a breach by injunction if this is the only practical mode of enforcement which its terms permit." Approved in S. Chicago Ry. Co. v. Calumet Ry. Co., 171 Ill. 391.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was a bill in chancery, in the St. Clair Circuit Court, by appellant against appellee, praying for injunction, restraining appellee, its officers, agents and employes from preventing, or in any manner interfering with appellant in the construction and laying of a railroad track in certain of appellee's streets. At the February term, 1898, the cause was heard, on bill, answer, replication and oral evidence, and resulted in an order denying the injunction and dismissing appellant's bill, at its costs. Appellant appeals and assigns as error that the Circuit Court erred in dismissing its bill, and in not decreeing an injunction as prayed.

On the 6th day of April, 1897, appellee, the City of East St. Louis, passed ordinance No. 483, as follows:

" An ordinance granting the right of way in certain streets therein named to the Belleville City Railway Company and East St. Louis Connecting Railway Company.

" Be it ordained by the City Council of the City of East St. Louis:

" Section 1. That in consideration of the sum of three hundred ($300) dollars to be paid to the city treasurer within thirty (30) days after the passage of this ordinance, by the Belleville City Railway Company and the East St. Louis Connecting Railway Company, or either of them, there is hereby granted to said companies jointly and to each of them severally the right to construct and maintain one single or double track railway, with necessary turnouts, in, along and upon the street in Illinois City lying next to and north of Blocks 59, 11, 12, 13, 14, 15, 16, 17, 18, 19 and 20, from its most eastern to its most western extremity; and also in, along and upon the street in said city of East St. Louis, known as Second street or New Second street, as said street appears upon a plat recorded in the recorder's office of St. Clair county, Illinois, in plat book " A," on pages 227 and 228, from the northern extremity of said

Second street to its junction with St. Louis avenue; and also along, in and upon all that part of Illinois avenue, in said city, lying west of the east line of said Second street; and also the right to construct and maintain such railway across any and all streets which it may be necessary to cross in order to follow the route hereinbefore indicated; and also the right to construct and maintain such railway in, along and upon a strip of land 28 feet wide lying south of and adjoining the Chicago & Alton Railroad Company's depot grounds in the Ferry Division to said city; and also in, along and upon Wiggins street in said division, and across so much of Second, Third and Fourth streets, in said division, as lies between said strip and Wiggins Ferry street aforesaid.

" Sec. 2.    This ordinance shall be in force from after its passage, but unless the payment hereinbefore mentioned is made as required this ordinance shall be void."

This ordinance was published on the 8th day of April, 1887, and at the hour of 11 o'clock A. M. of that day, after the newspaper containing the publication was issued, the companies named in the ordinance paid to the city treasurer the three hundred dollars ($300) and took his receipt therefor.    Afterward, on the same day, the city council passed the following ordinance :

" An ordinance repealing ordinance No. 483, entitled 'An ordinance,' granting the right of way in certain streets therein named to the Belleville City Railway Company and the East St. Louis Connecting Railway Company, alleged to have been passed and approved April 6, 1887:

" Be it ordained by the city council of the city of East St. Louis :

" Section 1.    That ordinance No. 483, entitled ' An ordinance granting the right of way in certain streets therein named to the Belleville Railway Company and the East St. Louis Connecting Railway Company, alleged to have been passed and approved April 6th, 1887, be and the same is hereby repealed.'

" Sec. 2.    That this ordinance be in full force and effect from and after its passage and promulgation.

" Sec. 3.    That the city clerk or mayor is instructed to have this ordinance promulgated and published in the East St. Louis Gazette at once."

This ordinance was duly published on the 9th day of April, 1887.

On the 14th day of April, 1887, the city council of said city passed a resolution directing the city treasurer to return to said companies the three hundred dollars ($300), with legal interest from the date of payment, and empowering the mayor to attend to the enforcement of the resolution.

On the 25th day of February, 1893, the Belleville City Railway Company, for a valuable consideration, waived and released all the rights and privileges it had acquired under the first ordinance to the complainant, and agreed not to use or exercise the same.

Some time in the month of October, 1897, appellant began to construct its railroad upon some of the streets claimed to be embraced in the ordinance, and appellee interfered by force and prevented appellant from proceeding, and thereupon the bill in this case was filed.

Appellant contends "that this was a sale of a right for a money consideration, and no limitation as to the time was put upon its exercise." In effect the contention is, that the transaction between the city council and appellant was a sale, by the city to appellant, of the right to construct and maintain a railway upon certain public streets, at any time in the future that appellant might see fit to do so; that the city council had full power to make such sale and bind the city indefinitely thereby; that the ordinance revoking the right is without power and void, and that neither the revoking ordinance nor the lapse of time furnish any justification for refusing to allow appellant to now enter and enjoy the privilege.

If there is any valid contractual relation now existing between appellant and appellee, it is, in effect, an agreement on the part of appellee to permit appellant to construct and maintain a railway upon the streets named.

The bill charges that on the ―― day of October, 1897, appellant " began to construct the railway in and upon one of the streets in the said ordinance mentioned, and the said city by its police and employes and agents compelled the

servants of your orator to desist from their work in that behalf, and would not allow them or any of them to take their work in that behalf, and would not allow them, or any of them, to take steps necessary to construct said railway, and threatened your orator's servants with arrest and violence unless they desisted from such work; that said city, through its police and officers and agents, threatens to prevent by force the exercise by your orator of the rights, privileges and licenses granted to it by said ordinance, and unless the said city is enjoined from so doing, it will so prevent your orator and do injury to your orator that will be irreparable and not susceptible of computation; and will make necessary a large number of suits at law."

This bill is so far in the nature of a bill for specific performance that we feel called upon to apply, in this case, the doctrines and rules applicable to such bills. In Pomeroy's Equity Jurisprudence, Sec. 1341, it is said:

"An injunction restraining the breach of a contract is a negative specific enforcement of that contract. The jurisdiction of equity to grant such an injunction is substantially coincident with its jurisdiction to compel a specific performance. Both are governed by the same doctrines and rules. It may be stated as a general proposition, 'that whenever the contract is one of a class which will be affirmatively, specifically enforced, a court of equity will restrain a breach by injunction if this is the only practical mode of enforcement which its terms permit.'"

In Chicago Mun. Gas Light Co. v. Town of Lake, 130 Ill. 42, the Town of Lake had entered into a contract with the Chicago Municipal Gas Light Co., whereby it had granted to said company the right to lay and maintain gas mains and pipes in the public streets. The gas company commenced to lay its pipes on one of the streets embraced within the terms of the contract, and the police of the town, acting under authority of the board of trustees, forcibly prevented the servants of the company from proceeding with the work. Thereupon the company filed a bill in chancery, the object of which was to enjoin the town from interfering with the progress of the work.

The court says:  " The bill of complaint in this case, though not strictly a bill for specific performance of a contract, is, in substance, a bill of that kind," and the court there quotes with approval what we have above quoted from Pomeroy.

It is the settled doctrine in this State that a party can not, as a matter of right, have a contract specifically enforced in equity, but that the exercise of this power rests in the sound discretion of the court, in view of the terms of the contract and the surrounding circumstances. Phelps v. I. C. R. R. Co., 63 Ill. 468; McCabe v. Crosier, 69 Ill. 501; Ralls v. Ralls, 82 Ill. 243; Beach v. Dyer, 93 Ill. 295; Hetfield v. Willey, 105 Ill. 286.   In C., B. & Q. R. R. Co. v. Reno, 113 Ill. 39, it is held that no positive rule can be laid down by which the action of the court shall be governed in such cases, but that a bill for the specific performance of a contract is addressed to the sound discretion of the court, and that relief will not be granted, as a matter of course, although a legal contract may be shown to exist. It will not be granted where it would be inequitable to do so, nor where to do so would interfere with public interests.   The evidence shows that during all the time for more than ten years after the passage of the ordinance granting the right and the one revoking the grant, neither appellant nor its co-grantee made any attempt to exercise the rights now claimed, nor made any expenditure on the faith of the grant, but apparently during all that long period acquiesced in the action of the city council revoking the grant.   During that time the city has doubled its population; has become incorporated under the general law, the streets have been extended, the city has erected, at a cost of $50,000, a public school building abutting upon one of the streets embraced in the grant, and many private residences have been erected along these streets and are occupied by citizens of the city.

The court will not decree specific performance of a contract grossly unequal in its terms, nor where the complainant has been guilty of *laches,* and by lapse of time such changes in conditions have taken place as to make the

enforcing of performance an injustice. Taylor v. Merrill, 55 Ill. 52; Iglehart v. Gibson, 56 Ill. 81; Kimball v. Tooke, 70 Ill. 553; Beach v. Dyer, 93 Ill. 295.

We regard the money consideration paid for the granted right as merely nominal. The substantial consideration must have been the anticipated advantage to the city and the public to result from the building and maintaining of the proposed railroad. The delay for so many years to build the railroad was gross *laches*. The conditions of the city greatly changed during that long delay. To decree specific performance at this late date would be inequitable and unjust, and would also interfere with public interests. The decree of the Circuit Court is affirmed.