TURN VEREIN EICHE, Appellant, *vs.* PAUL KIONKA, Appellee.

*Opinion filed October 26, 1912.*

1. SPECIFIC PERFORMANCE—*when proposed vendor is not bound to furnish an abstract of title.* A provision in a contract reciting the receipt of an advance payment for land and providing for the payment of the remainder of the consideration "on the delivery of a good and sufficient warranty deed of conveyance of the same within fifteen days from this date, or as much sooner thereafter as the deed is ready·for delivery, after the title has been examined and found good," does not require the proposed vendor to furnish an abstract of title.

2. SAME—*rule where parties have made time of performance material.* Where the parties have made the time of performance material, a court of equity will not enforce performance contrary to the expressed intention of the parties, and will indulge no presumption in favor of a waiver or abandonment of the provision nor infer such waiver or abandonment from slight proof.

3. SAME—*what complainant must show.* One seeking to specifically enforce a contract·for the sale of land must prove that he has complied with the terms of the contract or that he was able, ready and willing to comply ˙therewith but was prevented from doing so by the refusal of the other party to perform, and the proof in such case must be clear and satisfactory.

4. SAME—*proposed vendor not obliged to extend time for performance.* Where the proposed vendor offers to extend the time

for performance by the vendee upon payment of a certain sum but the money is not paid before the contract expires by its terms, the vendor is under no obligation to afterward extend the time and fulfill his part of the contract.

APPEAL from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

CHARLES E. MILROY, for appellant.

HENRY M. HAGAN, for appellee.

Mr. JUSTICE FARMER delivered the opinion of the court:

Appellant filed its bill in chancery in this case praying the specific performance of a contract to convey certain real estate described in the contract. After issue was joined the case was referred to a master in chancery to take and report the testimony, together with his conclusions thereon. The master reported that in his opinion appellant was not entitled to specific performance and he recommended a decree dismissing the bill. The chancellor, after overruling exceptions by appellant to the master's report, entered a decree dismissing the bill, and the case is brought here by appeal.

The real estate belonged to appellee, and appellant desired to purchase it for the purpose of erecting thereon a hall, gymnasium, etc. Negotiations were begun between the parties on March 27, at which time representatives of appellant called upon appellee, who is a physician, to ascertain if he would sell the property and the price he asked for it. At that time appellee asked $11,180 for the premises. Appellant's representatives endeavored to get him to agree to accept $11,000, and appellee promised he would think over the matter and let them know later. Subsequently he called the parties who had visited him, by telephone, and said he would take $11,090. This being satis-

factory to appellant's agents the contract upon which this
suit is based was prepared and signed, and is as follows:

*"Contract for Sale of Real Estate.*

"CHICAGO, *April 1, 1910.*

"Received of F. Bethig (for the Turn Verein Eiche) fifty and
no/100 dollars, as part payment toward the purchase of the follow-
ing described real estate: Lots 16, 17 and 18, block 2, Kionka sub-
division, which is hereby bargained and sold to the said F. Bethig
(for the Turn Verein Eiche) for the sum of eleven thousand and
ninety (11,090) dollars, eleven thousand and forty (11,040) dol-
lars more to be paid on the delivery of a good and sufficient war-
ranty deed of conveyance of the same within fifteen days from
this date, or as much sooner thereafter as the deed is ready for
delivery, after the title has been examined and found good, and
the balance to be paid as follows: None. The said F. Bethig
(for the Turn Verein Eiche) to assume all taxes and special as-
sessments legally levied subsequent to the year 1909; also to as-
sume all unpaid installments on special assessments legally levied
and payable subsequent to the year 1909. Should the title to the
property not prove good then this $50 to be refunded. But should
the said F. Bethig (for the Turn Verein Eiche) fail to perform
this contract on his part promptly at the time and in the manner
above specified, (time being of the essence of this contract,) then
the above fifty and no/100 dollars shall be forfeited by him as
liquidated damages and the above contract shall be and become
null and void.                              P. B. KIONKA,   (Seal.)
                                            F. BETHIG,      (Seal.)
                             For the Turn Verein Eiche. (Seal.)"

Appellant did not have the money to pay for the lots.
It had in the neighborhood of $3000, and took up the mat-
ter with a representative of the Pullman Bank, and also
with officers of the Joliet Brewing Company, of borrowing
money to pay for the lots and the buildings to be erected
thereon. The purpose of the society was to erect a build-
ing at a cost of $60,000 or $65,000. At a meeting of the
appellant society held Wednesday evening, April 13, a reso-
lution was adopted for the appointment of a committee to
secure an extension of time for the completion of the pur-
chase of the property from appellee, in order to give the
society time to raise the money. The minutes of the meet-
ing recite that VanMeter and Wild, members of the so-

ciety, volunteered to serve as such committee, and that
subscription lists were given out for the purpose of secur-
ing donations from the members of the society. On Fri-
day, April 15, VanMeter and Wild called upon appellee to
talk with him about an extension of the contract. Van-
Meter did not testify as a witness. There is a conflict
between the testimony of Wild and appellee as to just
what the conversation between the parties was, but it is not
claimed by appellant that an extension of time was agreed
to by appellee. That night Wild and another party named
Bethig talked to appellee about extending appellant leniency
upon the payment of a further sum of money. They tes-
tified appellee first spoke of $500 and finally said he must
have $2000 in cash, and refused to accept the check of
either of the parties for that amount. It was after bank-
ing hours and they did not have in their possession that
amount of cash. The next day, which was Saturday, the
16th, F. H. Novak and Wild called upon appellee. Novak
was the attorney who brought the suit for appellant and
acted in that capacity until a part of the evidence was heard
before the master in chancery, when he withdrew as coun-
sel in the case and testified as a witness. He testified that
when Wild introduced him to appellee as appellant's attor-
ney and stated they came to see about the property, ap-
pellee replied that they were too late,—that the time was
up,—to which Novak replied the contract would not ex-
pire until the 17th, which was Sunday, and that under
appellee's own construction of it they would have until
Monday to close the deal. It was Novak's contention,—
and that is appellant's position in this suit,—that it was
the duty of appellee to furnish an abstract of title, and
that appellant would have a reasonable time after receiving
the abstract of title to examine it and investigate the title.
He testified appellee said he could not get the abstract until
Monday, as it was locked in a safety deposit vault in a
bank that closed on Saturday noon, and inquired if the

witness would come back Monday. Novak said he could
not do so but it was agreed that Wild should return Mon-
day, at which time appellee would have the abstract ready.
Wild testified he called at appellee's place of business Mon-
day, about eleven o'clock, and told appellee he had come
to see him with regard to the abstract; that appellee said
all right,—they would go down-stairs to the place where
the papers were. They went to the place where the papers
were, which was a bank, and a Mr. Wolf, who was con-
nected with the bank, got a deed executed by appellee and
wife and acknowledged before Wolf, with a blank where
the grantee's name should be, and also an abstract relating
to the title. Wolf and appellee told Wild that upon the
payment of the balance of the money the deed and abstract
would be delivered to him. Wild did not have the money
and appellee refused to deliver the abstract and deed to
him. Appellee testified that Wild and he went to the bank
where the papers were; that Wolf produced them and told
Wild he could have them upon the payment of the balance
of the purchase money; that Wild said he would not pay
it and Wolf refused to deliver the papers to him. Wolf
testified substantially to the same thing.

It is not claimed by appellant that it offered to appellee
the balance of the purchase price of the property within
the fifteen days specified in the contract, but it contends
that its failure to do so was the fault of appellee; that it
was the duty of appellee, under the written agreement, to
furnish it an abstract of title and give it sufficient time to
investigate it for the purpose of determining whether the
title was good, and it is contended the refusal of appellee
to furnish an abstract was the cause of appellant's fail-
ure to perform the contract on its part within the time
specified. We do not agree with that construction of the
contract. Appellee was under no obligation to furnish an
abstract of title. His contract was to make a warranty
deed within fifteen days, or sooner if upon examination the

title was found good and the balance of the purchase price paid. Nothing whatever is said about furnishing an abstract. Under the terms of the contract it was the duty of appellant to examine the title and determine whether it was good or not, and if satisfied with the title notify appellee and offer to comply with the terms of the agreement on its part. We think the proof warrants the conclusion that the real reason for the failure of appellant to perform its part of the agreement within the time limited was that it did not have the money. It had some negotiations with an officer of the Pullman Bank and certain officers of a brewing company, and witnesses testified they had received promises of the money, and the president of the brewing company testified he was ready, on twenty-four hours' notice, to furnish the balance of the money to pay for the property. Nevertheless, the money was not forthcoming during the lifetime of the contract, and, as we have seen, on the 13th of April a committee was appointed to secure an extension of time. Appellee offered to extend the time upon the payment of $2000 in cash. This sum was not paid, and he was under no obligation to extend the time and was under no obligation to offer to fulfill his part of the agreement after the time fixed by the written agreement expired.

In our view appellant's proof entirely fails to meet the requirement necessary to authorize a decree for the specific performance of a contract to convey real estate. The rule is that specific performance can never be demanded as a matter of absolute right. It rests in sound judicial discretion, but where all the necessary incidents and conditions are proven by satisfactory evidence, the relief should be decreed as a matter of right and not as a mere favor. (*Evans* v. *Gerry,* 174 Ill. 595.) The party seeking to enforce specific performance must prove he has complied with, or that he was able, ready and willing to comply with, the terms of the contract but was prevented from doing so by the

refusal of the other party to perform it on his part. The proof in such cases must be clear and satisfactory. (*Ralls* v. *Ralls,* 82 Ill. 243; *Rutherford* v. *Sargent,* 71 id. 339; *Hatch* v. *Kizer,* 140 id. 583.) Where the parties have made the time of performance material, a court of equity has no power to enforce performance contrary to the expressed intention of the parties, (*Skeen* v. *Patterson,* 180 Ill. 289,) and courts will indulge no presumptions in favor of a waiver or abandonment of the contract, nor will they infer waiver or abandonment from slight proof. *Evans* v. *Gerry, supra.*

It seems very clear that appellant did not make a case entitling it to have the contract specifically performed. The decree is affirmed.                    *Decree affirmed.*